**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN W. RENNIE, Husband; RUTH F.
RENNIE; CHARLES M. CROCKER,
Plaintiffs-Appellants,

v.

OMNIFLIGHT HELICOPTERS,
INCORPORATED,
Defendant-Appellee,

and

No. 97-1524

SCHWEIZER AIRCRAFT CORPORATION;
TEXTRON LYCOMING, a division of
AVCO Corporation; EXXON COMPANY,
USA, a division of Exxon
Corporation; QUALITRON AERO
SERVICES, INCORPORATED, d/b/a Avitat
Iah/Qualitron; OMNIFLIGHT AIRWAYS,
INCORPORATED,
Defendants.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CA-96-450-WMN, CA-96-451-WMN)

Argued: March 4, 1998

Decided: October 23, 1998

Before LUTTIG and MICHAEL, Circuit Judges, and HILTON,
Chief United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished opinion. Chief Judge Hilton wrote the opinion, in which Judge Luttig joined. Judge Michael wrote a dissenting opinion.

_____

## COUNSEL

**ARGUED:** Noah Hy Kushlefsky, KREINDLER & KREINDLER, New York, New York, for Appellants. David Lee Rutland, WHARTON, LEVIN, EHRMANTRAUT, KLEIN & NASH, Annapolis, Maryland, for Appellee. **ON BRIEF:** Marc S. Moller, David L. Fiol, KREINDLER & KREINDLER, New York, New York; Henry L. Belsky, SCHLACHMAN, BELSKY & WEINER, P.A., Baltimore, Maryland, for Appellants. James T. Wharton, WHARTON, LEVIN, EHRMANTRAUT, KLEIN & NASH, Annapolis, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

HILTON, Chief District Judge:

This case is before the Court on the District Court's Order dismissing the Omniflight defendants on the grounds that the Amended Complaint was not timely filed. Finding no error, we affirm.

On October 18, 1992, Plaintiffs, John Rennie and Charles Crocker, Baltimore City Police Officers acting in the line of duty, were seriously injured when the engine failed in the helicopter in which they were flying. On October 6, 1995, within three years of the crash, Plaintiffs sued Helicopter Transport Services, Inc. ("HTS") in the Circuit Court for the City of Baltimore for negligent maintenance of the helicopter. Plaintiffs also sued the manufacturer of the helicopter.

2

At the time of the crash, Omniflight Helicopters, Inc. ("Omniflight"), had an agreement with the Baltimore City Police Department to maintain and service the police helicopters. Omniflight maintained a facility at Hanger 6, Martin State Airport in Baltimore. At the time the lawsuit was filed, HTS was operating out of that facility.

The Plaintiffs filed their Complaint in state court and identified HTS as "Helicopter Transport Services, Inc. formerly known as Omniflight Helicopters, Inc. and Omniflight Airways, Inc." On November 13, 1995, process was served on HTS in Maryland, and was served on HTS on December 4, 1995, at Omniflight's offices in Dallas, Texas.

In response to the earlier service in Maryland, HTS filed a motion to dismiss on the ground that it did not exist at the time of the accident. HTS argues that it could not be held liable as a successor corporation because it was a separate and distinct corporation. Omniflight continued to exist after HTS took over some of Omniflight's contracts, including the contract with the City of Baltimore. Plaintiffs agreed to dismiss the claim against HTS.

On January 29, 1996, Plaintiffs filed amended complaints and explicitly included Omniflight as a party to the lawsuits. The helicopter manufacturers removed the cases to federal court and the cases were consolidated. Omniflight then moved to dismiss the complaint on the grounds that it was untimely under the Maryland three year statute of limitations.

On April 9, 1997, the United States District Court for the District of Maryland dismissed the Omniflight defendants from the case on the basis that the amended complaint was barred by the statute of limitations.

The rule which governs resolution of this case is Fed.R.Civ.P. 15(c) which provides the circumstances under which an amended pleading will be found to relate back to the date of the initial pleading. The first requirement is that the claim in the amended pleading arise out of the same transaction or occurrence as the original claim. Fed.R.Civ.P. 15(c)(2). As both the original and amended complaints

3

arise out of the same accident, this requirement is not in dispute in this appeal.

In the case of an amendment which changes the party or the naming of a party, Rule 15 imposes further constraints. It requires that the party brought in by amendment has received such notice of the claim within 120 days of filing of the initial complaint, that the party will not be prejudiced in maintaining a defense on the merits, and that the party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Fed.R.Civ.P. 15(c)(3).

The fact that the process was addressed to HTS "formerly known as Omniflight" was sufficient to place Omniflight on notice that it might be named as a defendant in the lawsuit. Omniflight did not argue that it would be prejudiced in maintaining a defense on the merits. Therefore, the Rule 15 requirement that must be examined more closely is whether Omniflight should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against them. See Fed.R.Civ.P. 15(c)(3).

Plaintiffs contend that Omniflight knew that it, not HTS, was the company with the maintenance contract with the City of Baltimore. However, Plaintiffs knew that Omniflight was the party that contracted to maintain the helicopters. The fact that Plaintiffs thought that HTS was successor in interest to Omniflight does not satisfy the requirements of Rule 15. Therefore, the naming of HTS in the original complaint was a misjoinder, not merely a misnomer. See Archuleta v. Duffy's, Inc., 471 F.2d 33, 35 (10th Cir. 1973).

This Court in Western Contracting Corp. v. Bechtel Corp., 885 F.2d 1196 (4th Cir. 1989), looked at the issue of relation back under Rule 15 and quoted from Wood v. Worachek. 618 F.2d 1225, 1230 (7th Cir. 1980). This Court found that an amendment is permitted to relate back only where an error was made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake. This Court, however, does not permit relation back where there is a lack of knowledge of the proper party.

The Seventh Circuit in Wood found that an amendment with relation back is permitted in order to correct a misnomer of a defendant

4

if the proper defendant is already before the court and the effect is to correct the name under which he is sued. However, a new defendant cannot be substituted or added by amendment after the statute of limitations has run. Rule 15(c)(3) permits an amendment to relate back only where there has been an error made concerning the identity of the proper party, and where that party is not chargeable with knowledge of the mistake. Rule 15(c)(3) does not permit relation back where there is a lack of knowledge of the proper party. In the absence of a mistake in the identification of the proper party, it is irrelevant for the purpose of Rule 15(c)(3) whether or not the purported substitute party knew or should have known that the action would have been brought against him.

There is relation back where a plaintiff has misnamed the party the plaintiff actually intended to sue who is already part of the lawsuit, but not where the plaintiff was simply wrong about who the plaintiff wanted to sue. In this case, Plaintiffs made an actual mistake as to the party they wanted to sue. Plaintiffs intended to sue HTS because they believed HTS was the corporate successor to the party which was responsible for maintenance of the Baltimore City Police helicopters at the time of the 1992 crash. However, Plaintiffs were wrong as to who was the proper party. The remedy provided by Rule 15 does not cover this mistake.

The trial court was correct in ruling that Plaintiffs did not make a mistake concerning the identity of Omniflight within the contemplation of Fed.R.Civ.P. 15(c) because Plaintiffs were aware that Omniflight was the corporation that performed the allegedly negligent repairs. Therefore, the district court correctly held that this was not a case of misnomer and the case did not meet the standards for relation back under Rule 15. Accordingly, the judgment of the district court is

AFFIRMED.

MICHAEL, Circuit Judge, dissenting:

I dissent. The allegations of the complaints are directed at the company that was responsible for the maintenance of the helicopter at the time of the crash, and, on their face, they unmistakably reveal that the

5

plaintiffs believed that this company had simply changed its name from Omniflight to HTS. Omniflight received notice of the complaints within the 120-day period allotted by Rule 4(m); indeed, it received actual service of process. Moreover, it could not have helped but know that HTS's naming was a mistake, that the mistake resulted from the plaintiffs' belief that Omniflight had renamed itself, and that the plaintiffs would surely have brought the case against Omniflight had they not been mistaken. Under these circumstances, Rule 15(c)(3) commands that the amendment of the complaints relate back to the date the suit was originally filed.

I.

> The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

Conley v. Gibson, 355 U.S. 41, 48 (1957). To this end, Rule 8(f) commands that "[a]ll pleadings shall be so construed as to do substantial justice."

We need not even resort to Rule 8(f) here, inasmuch as the cause for and character of the plaintiffs' mistake is plain for all to see. The majority quotes from the caption of the complaints, which defined the defendant as HTS, "formerly known as" Omniflight. In my view, this caption alone reveals a belief that HTS was simply a renamed Omniflight. But there is much more in the body of the complaints to the same effect. I quote from the Rennie complaint (emphasis added):

> 2. Helicopter Transport Services, Inc., and its predecessor companies Omniflight Helicopters, Inc. and Omniflight Airways, Inc., is a Delaware corporation which has offices and does business in the State of Maryland ....

> * * *

> 8. Helicopter Transport Services, Inc., and/or its predecessor companies Omniflight Airways, Inc. and Omni-

6

flight Helicopters, Inc., ... negligently [serviced the helicopter]; and Omniflight Helicopters, Inc. was otherwise negligent.

* * *

33. The subject engine and subject helicopter were being maintained and serviced by defendant Helicopter Transport Services, Inc., <u>when it was known as Omniflight Helicopters, Inc. and Omniflight Airways, Inc.</u> under a service contract between Helicopter Transport Services and Baltimore Police Department ....

The Crocker complaint contains identical assertions. Any reasonable reader of the complaints would understand that the plaintiffs did not choose to sue HTS <u>instead of</u> Omniflight on account of some legal judgment about their relative liability. Had they, I would agree that Rule 15(c)(3) would not permit relation back. <u>See Rendall-Speranza v. Nassim,</u> 107 F.3d 913, 918 (D.C. Cir. 1997) ("Nothing in the Rule or in the Notes indicates that the provision applies to a plaintiff who was fully aware of a potential defendant's identity but not of its responsibility for the harm alleged."). Instead, the plaintiffs believed that by suing HTS they were suing <u>the same entity</u> that had once been Omniflight. They were wrong, of course, and the nature of their mistake is the key to this case. To my mind, the mistake can only be one of identity. "Identity" is, among other things, "[t]he quality or condition of being the same as something else."[1] The plaintiffs thought that HTS was the same as Omniflight, but it was not; they therefore made a mistake about "identity."

II.

The majority asserts that "[t]here is relation back where a plaintiff has misnamed the party the plaintiff actually intended to sue who is already part of the lawsuit, but not where the plaintiff was simply wrong about who the plaintiff wanted to sue." Ante at 5. The first half of the sentence is an understatement that is true as far as it goes. The

_____

[1] Webster's II New Riverside University Dictionary 607 (1988).

7

second half is an overstatement that may or may not be true depending on the result of the analysis actually called for by the Rule.

Rule 15(c)(3) will never come into play unless the plaintiff was "simply wrong" about the party or the name of the party it wished to sue. The issue is not _whether_ the plaintiff was "simply wrong," but _why_. If the error was one of the defendant's identity, the Rule may permit relation back. Otherwise, it does not.

I labeled the first half of the majority's proposition of law an understatement because it implies that Rule 15(c)(3) corrects only classic misnomers, _e.g._, if the plaintiffs here had sued Omniflight only to find that it had indeed changed its name to HTS. The Rule is far broader than that. If its notice requirements are satisfied, it permits relation back where "the amendment changes _the party_ or _the naming of the party_ against whom a claim is asserted[.]" (emphasis added). Of course, where the mistake is simply a misnomer, the notice requirements will usually be satisfied. However, for more substantial misidentifications, notice may be problematic. Nevertheless, the issue is always notice to the party intended to be sued, _Schiavone v. Fortune_, 477 U.S. 21, 31 (1986), and not whether the amendment adds the party or simply corrects its name.

III.

Omniflight also asserts that the plaintiffs' investigation of the proper entity to sue was unduly cursory, and any reasonable investigation would have revealed that it continued to exist and had not changed its name to HTS. Rule 15(c)(3) could well have been written to permit amendments to relate back or not depending on the plaintiff's diligence or negligence. It was not so written. "The linchpin [of the Rule] is notice," _Schiavone_ at 31, and the adequacy of notice is defined from the defendant's perspective. The defendant must know, within the time allotted for service of process, enough about the case so as not to be prejudiced in its defense, and it must or should know that "but for a mistake concerning the identity of the proper party, the action would have been brought against [it]." Fed. R. Civ. P. 15(c)(3). Omniflight surely knew that much here, however avoidable might have been the mistake concerning its identity. It should therefore be required to defend the suit on the merits, not because the plaintiffs'

8

mistake was excusable, but rather because the mistake was <u>of no consequence</u> given the function of the pleading. The complaint apprised Omniflight that it was the intended defendant; the complaint thus served its purpose.

> A suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice; and the purpose of process is to bring parties into court. If it names them in such terms that every intelligent person understands what is meant, as is the case here, it has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else.

<u>United States v. A. H. Fischer Lumber Co.</u>, 162 F.2d 872, 873 (4th Cir. 1947).

We should be especially mindful of avoiding the"`sporting theory of justice'"[2] we criticized in the above passage where Rule 15(c)(3) is applied to corporations. The corporate form is easy to use and easy to abuse. Like natural persons, corporations come into and go out of existence. Unlike natural persons, corporations can also merge and split. They can buy, sell, own, and even consume one another. They can be renamed or reincarnated. A given business may consist of one or dozens of individual corporations depending on its owners' strategies and whims, and its structure may not be readily apparent to the public or even to its own employees.

Here, the record reveals that HTS's current Chief Operating Officer and Executive Vice-President, Michael Aslaksen, was in charge of the Aviation Services Division of Omniflight when it operated out of the Baltimore hangar and was also the person to whom notices were sent on behalf of a partnership that briefly held title to Omniflight's Maryland assets. My point is not to suggest anything improper about HTS's acquisition of those assets, but rather to illustrate that even after the most complex metamorphoses of those legal abstractions we

_____

[2] **Schiavone**, 477 U.S. 32-33 (Stevens, J. dissenting) (quoting Roscoe Pound, <u>The Causes of Popular Dissatisfaction with the Administration of Justice</u>, 29 A.B.A. Rep. 395, 404-405 (1906)).

9

call corporations, the human faces one encounters at a place of business can remain very much the same. There may be no remarkable difference between today and 1992 at the Baltimore hangar except the name on the wall.

IV.

Omniflight has dodged this lawsuit for no just reason. It was fully and timely apprised of the plaintiffs' claims and of its alleged liability for them. It surely knew that HTS had been sued because of confusion with, rather than in distinction to, Omniflight. It surely knew that, absent the plaintiffs' confusion, it, and not HTS, would have been named the defendant.

The purpose of the Federal Rules of Civil Procedure is to make procedure the servant of justice. This purpose is not served by today's decision.

I would reverse the judgment of the district court.

10