# Syllabus

Chief Justice: | Justices:
Stephen J. Markman | Brian K. Zahra
| Bridget M. McCormack
| David F. Viviano
| Richard H. Bernstein
| Kurtis T. Wilder
| Elizabeth T. Clement

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Kathryn L. Loomis

## MCQUEER v PERFECT FENCE COMPANY

Docket No. 153829. Argued on application for leave to appeal April 12, 2018. Decided July 10, 2018.

David J. McQueer brought a negligence action in the Grand Traverse Circuit Court against his employer, Perfect Fence Company, to recover damages after he was injured on the job. Defendant moved for summary disposition on the ground that the exclusive-remedy provision of the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.*, barred plaintiff's action. Plaintiff responded that his action was not barred because defendant had violated MCL 418.611 by failing to procure workers' compensation coverage for him and had violated MCL 418.171 by encouraging him to pose as a nonemployee. Plaintiff additionally moved to amend his complaint to add claims of intentional tort and breach of an employment contract. Plaintiff argued that the evidence raised a question of fact about whether defendant intended to injure him in a way that brought plaintiff's claim within the scope of the intentional-tort exception to the exclusive-remedy provision of the WDCA. The trial court granted defendant's motion for summary disposition under MCR 2.116(C)(10), concluding that defendant had not violated MCL 418.611 because defendant had provided workers' compensation coverage. The court also ruled that MCL 418.171 was not applicable to plaintiff's claims. The court denied plaintiff's motion to amend his complaint, concluding that amendment would be futile because the undisputed facts did not demonstrate that defendant intended to injure plaintiff. Plaintiff appealed. The Court of Appeals, HOEKSTRA and SHAPIRO, JJ. (TALBOT, C.J., concurring), reversed the trial court's grant of summary disposition and denial of plaintiff's motion to amend his complaint in an unpublished per curiam opinion issued April 19, 2016 (Docket No. 325619). The panel agreed with the trial court that defendant had not violated MCL 418.611, but it concluded that plaintiff had established a question of fact regarding whether defendant had improperly encouraged him to pose as a contractor for the purpose of evading liability under WDCA in violation of MCL 418.171(4). The panel also concluded that because plaintiff had presented sufficient evidence to create a question of fact regarding whether an intentional tort had occurred, the trial court abused its discretion by not allowing plaintiff to amend his complaint. Defendant sought leave to appeal. The Supreme Court ordered and heard oral argument on whether to grant the application or take other peremptory action. 501 Mich 954 (2018).

In an opinion by Justice ZAHRA, joined by Chief Justice MARKMAN and Justices VIVIANO and WILDER, the Supreme Court, in lieu of granting leave to appeal, *held*:

In limited circumstances, MCL 418.171(4) provides a civil remedy to an employee of a contractor engaged by a principal. Because plaintiff was not the employee of a contractor engaged by defendant, he had no cause of action under MCL 418.171. The part of the Court of Appeals judgment pertaining to MCL 418.171 was reversed.

1. MCL 418.131(1) provides that the right to recover workers' compensation benefits under the WDCA is an employee's exclusive remedy against the employer for a personal injury. However, MCL 418.641(2) provides an exception to MCL 418.131(1) for cases in which an employer violates MCL 418.171. MCL 418.171(1) provides that if "any employer subject to the provisions of this act, in this section referred to as the principal, contracts with any other person, in this section referred to as the contractor, who is not subject to this act . . . and who does not become subject to this act . . . prior to the date of the injury or death for which claim is made for the execution by or under the contractor of the whole or any part of any work undertaken by the principal, the principal shall be liable to pay to any person employed in the execution of the work any compensation under this act which he or she would have been liable to pay if that person had been immediately employed by the principal." MCL 418.171(3) provides that MCL 418.171 applies to a principal and contractor only if the contractor engages persons to work other than persons who would not be considered employees under MCL 418.161(1)(d). MCL 418.171(4) provides that principals willfully acting to circumvent the provisions of MCL 418.171 or MCL 418.611 by using coercion, intimidation, deceit, or other means to encourage persons who would otherwise be considered employees within the meaning of the WDCA to pose as contractors for the purpose of evading MCL 418.171 or the requirements of MCL 418.611 shall be liable subject to the provisions of MCL 418.641.

2. The Court of Appeals erred by considering the civil-remedy provision of MCL 418.171(4) in isolation rather than reading MCL 418.171 as a whole. MCL 418.171(1) sets forth a statutorily imposed employment relationship under which an employer assumes the role of a principal by contracting with a contractor for the performance of any work. The principal becomes liable for the payment of workers' compensation benefits to any person employed by the contractor for injuries sustained while performing any work on behalf of the principal, provided that the contractor is either not subject to the WDCA or has failed to obtain adequate insurance as required by the WDCA. MCL 418.171(1) thus creates a tripartite employment relationship among the principal, the contractor, and the contractor's employees. MCL 418.171(3) provides that MCL 418.171 applies to a principal and contractor only if the contractor engages employees, as defined elsewhere in the WDCA. The qualifying language "only if" limits the applicability of the entire section, including Subsection (4). In this case, plaintiff was a direct employee of defendant, not an employee of a contractor, and therefore no tripartite employment relationship existed. Accordingly, the requirements of Subsection (3) were not met, and plaintiff could not seek the civil remedy under Subsection (4).

3. The Court of Appeals failed to give proper meaning to the term "principal," which has a specialized meaning under MCL 418.171 and is not interchangeable with the term "employer." MCL 418.171(1) designates the "principal" as an employer who contracts with a contractor that does not have adequate workers' compensation coverage for its employees. Accordingly, not all employers are principals under the statutory-employer provision. Further, MCL 418.171(1) states that a principal can be liable to pay the compensation that it would have been liable to pay if that person, the contractor's employee, had been immediately employed by the principal. In

other words, the principal is not the employee's actual employer; the principal is merely deemed to be the employer for certain purposes. To read "principal" as being equivalent with "employer" would render the statutory requirements under Subsection (1) superfluous. The principal may have its own employees, but those employees are not the protected parties under MCL 418.171. Under MCL 418.171, the principal may become the statutory employer only for purposes of providing workers' compensation benefits to the contractor's employees. The civil-remedy provision in MCL 418.171(4) only applies to principals willfully acting to circumvent MCL 418.171 or MCL 418.611 by encouraging employees to pose as contractors. Because defendant had not contracted with a contractor with inadequate workers' compensation coverage for its own employees, defendant was not a "principal" for purposes of the statutory-employer provision, and the civil-remedy provision under MCL 418.171(4) did not apply.

Court of Appeals judgment reversed in part; application for leave to appeal denied in part.

Justice ZAHRA, joined by Chief Justice MARKMAN and Justice WILDER, concurred in full with the majority opinion but wrote separately to dissent from the Court's decision not to address defendant's claim regarding plaintiff's motion to amend his complaint. Defendant argued in his application for leave to appeal that the Court of Appeals erred by reversing the trial court's denial of plaintiff's motion to amend his complaint to allege that defendant had committed an intentional tort, which is an express exception to the exclusive-remedy provision of the WDCA. The WDCA provides that an intentional tort exists only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury, and plaintiff failed to present evidence that defendant either had a specific intent to injure him or had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. Therefore, Justice ZAHRA would have held that the trial court's decision to reject plaintiff's motion to amend his complaint was not an abuse of discretion. Justice ZAHRA would have fully reversed the Court of Appeals' judgment and reinstated the trial court's orders granting summary disposition in favor of defendant and denying plaintiff's motion to amend his complaint.

Justice CLEMENT, joined by Justices McCORMACK and BERNSTEIN, concurring in part and dissenting in part, agreed with the majority's decision to deny leave to appeal regarding the remaining issues, but disagreed with its conclusion that MCL 418.171(4) provides a civil remedy only to an employee of a contractor engaged to a principal. She stated that because MCL 418.171(4) refers to "principals," who are defined in MCL 418.171(1) as "any employer subject to the provisions of this act," the plain language of the statute supported an interpretation of a "principal" as any employer subject to the WDCA, and defendant fit that definition. She also noted that MCL 418.171(4) refers to "employees within the meaning of this act" rather than to persons engaged to work by a contractor, which further indicated that a tripartite relationship was not required for the imposition of liability under MCL 418.171(4). Accordingly, Justice CLEMENT dissented from the reversal of the Court of Appeals' decision as to MCL 418.171(4), and she would have affirmed the Court of Appeals' holding that the trial court erred by granting summary disposition to defendant because plaintiff raised a genuine issue of material fact as to whether defendant willfully acted to circumvent the provisions of MCL 418.171 or MCL 418.611 by encouraging plaintiff, who acted as a full-time employee, to pose as an independent contractor.

©2018 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

FILED July 10, 2018

STATE OF MICHIGAN

SUPREME COURT

DAVID J. McQUEER,

      Plaintiff-Appellee,

v                               No. 153829

PERFECT FENCE COMPANY,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

ZAHRA, J.

Plaintiff, David J. McQueer, was injured in the scope of his employment and is now receiving benefits pursuant to the Worker's Disability Compensation Act (WDCA).[1] Plaintiff brought this action against Perfect Fence Company, his employer, to recover tort damages. Plaintiff maintains, among other things, that defendant is liable under MCL

---

[1] MCL 418.101 *et seq.*

418.171(4) because defendant used "coercion, intimidation, deceit, or other means to encourage [plaintiff] who would otherwise be considered [an] employee[] within the meaning of this act to pose as [a] contractor[] for the purpose of evading" liability under §§ 171 or 611 of the WDCA. The trial court dismissed plaintiff's action, concluding that MCL 418.171(4) was not applicable to plaintiff's claims. The Court of Appeals reversed, concluding that MCL 418.171(4) was applicable and that plaintiff had established a genuine question of material fact under that provision. We hold that MCL 418.171 does not apply in this case. In limited circumstances, § 171(4) provides a civil remedy to an employee of a contractor engaged by a principal. Because plaintiff is not the employee of a contractor engaged by defendant, he has no cause of action under MCL 418.171.

For this reason, as more fully explained in this opinion, we reverse the Court of Appeals judgment as to whether MCL 418.171 applies.[2]

## I. FACTS AND PROCEEDINGS

Plaintiff David McQueer worked intermittently as a laborer for defendant Perfect Fence Company.[3] On January 14, 2014, plaintiff was injured on the job when he was struck in the head by the bucket of a Bobcat front-loader. Plaintiff was installing fence posts with a coworker and Mike Peterson.[4] The proper method for installing fence posts

---

[2] We deny leave as to any remaining issues because a majority of the Court does not believe the remaining issues merit further review.

[3] It appears that plaintiff was a longtime employee of defendant. There is conflicting evidence regarding whether plaintiff requested to be paid "off the books."

[4] Plaintiff maintains that Peterson was his supervisor. Defendant maintains that Peterson was merely the senior member of the crew dispatched to the jobsite. To the extent there is a difference in these descriptions, viewing the evidence in a light most favorable to

2

is to use an auger or hand-digger to dig post holes to a depth of anywhere between 3 and 6 feet. Despite knowing this, Peterson decided to use the Bobcat bucket to hammer the fence posts into the frozen ground. Peterson and plaintiff had previously used the Bobcat bucket to hammer fence posts into the ground without injury.

Sometime before this accident, Bob Krumm, part-owner of defendant, learned that Peterson had used the Bobcat to hammer fence posts. Krumm became upset over this misuse of the Bobcat and informed Peterson and other employees that this extremely dangerous misuse of the Bobcat must cease immediately. During pretrial discovery, Krumm offered deposition testimony that when someone misuses a Bobcat to install fence posts in this manner he or she is "guaranteed to get hurt." Although plaintiff knew that Krumm did not want the Bobcat used to install fence posts, plaintiff felt compelled to "go along" with Peterson's actions, presumably because he was a senior employee to plaintiff. At the time of the Bobcat accident, plaintiff sat underneath the bucket, was not wearing a hard hat, and was talking on his cell phone. Plaintiff explained that Peterson had "miscalculated" in lowering the bucket, resulting in the fence post going farther into the ground than anticipated. According to plaintiff, the fence post hit a water pocket, which caused the post to go into the ground deeper than anticipated, causing the bucket to lower with some degree of force onto his head. Plaintiff testified in a deposition that Peterson did not intentionally injure him with the Bobcat. Plaintiff further stated in the deposition that he did not foresee this injury occurring through the misuse of the Bobcat.

_____

plaintiff, we accept for purposes of addressing defendant's claim of error that Peterson was plaintiff's supervisor.

3

The testimony diverges regarding what happened after the accident. According to plaintiff, as he was being transported to the hospital, Peterson told him not to tell anyone at the hospital that he was injured while working for defendant because he was "not on the books" and there were no workers' compensation benefits for him. After his release from the hospital, plaintiff claims that Krumm and defendant's accountant visited him at home and told him that he was not covered under defendant's workers' compensation plan. Krumm and defendant's accountant denied any such conversation. Regardless, it is undisputed that defendant had workers' compensation insurance that covered plaintiff's injuries. And, in fact, plaintiff is receiving ongoing workers' compensation benefits through defendant's workers' compensation insurer.

Plaintiff brought suit against defendant, alleging multiple claims based on negligence. Defendant moved for summary disposition on the ground that the WDCA's exclusive-remedy provision barred plaintiff's civil action. Plaintiff responded in opposition that his civil action was not barred under the WDCA because defendant had violated MCL 418.611 by failing to procure workers' compensation coverage for him and had violated MCL 418.171 by encouraging him to pose as a nonemployee. Plaintiff additionally moved to amend his complaint to add claims of intentional tort and breach of an employment contract. Plaintiff argued that the evidence raised a question of fact about whether defendant intended to injure him in a way that brought plaintiff's claim within the scope of the intentional-tort exception to the exclusive-remedy provision of the WDCA.

The trial court granted defendant's motion for summary disposition under MCR 2.116(C)(10), concluding that defendant had not violated MCL 418.611 because

4

defendant had provided workers' compensation coverage. The court also ruled that MCL 418.171 was not applicable to plaintiff's claims. The court denied plaintiff's motion to amend his complaint, concluding that amendment would be futile because the undisputed facts did not demonstrate that defendant intended to injure plaintiff.[5] Plaintiff appealed.

The Court of Appeals reversed the trial court's grant of summary disposition and denial of plaintiff's motion to amend his complaint.[6] The panel agreed with the trial court that defendant had not violated MCL 418.611.[7] The panel, however, concluded that plaintiff established a question of fact regarding whether defendant under MCL 418.171(4) used " 'coercion, intimidation, deceit, or other means to encourage persons who would otherwise be considered employees within the meaning of this act to pose as contractors for the purpose of evading' liability under sections 171 or 611 of the WDCA."[8] The panel also concluded that plaintiff had presented sufficient evidence to create a question of fact regarding whether an intentional tort had occurred under the judicially created "continuously operative dangerous condition" exception to the

---

[5] The trial court also denied plaintiff's request to add a breach-of-contract claim after granting defendant's motion for summary disposition and denying plaintiff's request to amend his complaint to include an intentional-tort claim. The court concluded that the breach-of-contract claim alone was insufficient to meet the jurisdictional threshold of the circuit court.

[6] *McQueer v Perfect Fence Co*, unpublished per curiam opinion of the Court of Appeals, issued April 19, 2016 (Docket No. 325619), p 1. Chief Judge TALBOT joined the majority's opinion in full but wrote a concurring opinion addressing whether plaintiff had standing. *McQueer*, unpub op at 1 (TALBOT, C.J., concurring). The standing issue is no longer in dispute.

[7] *McQueer*, unpub op at pp 4-5.

[8] *Id*. at 6, quoting MCL 418.171(4).

WDCA's exclusive-remedy provision.[9]   Thus, the panel determined that the trial court abused its discretion by not allowing plaintiff to amend his complaint.[10]

Defendant sought leave to appeal in this Court.   We directed the Clerk of this Court to schedule oral argument on whether to grant the application or take other action, ordering the parties to address the following issues:

> (1) whether the statutory employer provision of MCL 418.171 is applicable to the plaintiff's claims; and (2) if so, whether the plaintiff has established a genuine issue of material fact sufficient to avoid summary disposition; and (3) whether the Court of Appeals erred by reversing the Grand Traverse Circuit Court's order denying, on the basis of futility, the plaintiff's motion to amend his complaint to add an intentional tort claim.[11]

## II.  STANDARD OF REVIEW

We review de novo questions of law in a workers' compensation case.[12]   Questions of statutory interpretation are likewise reviewed de novo.[13]   We also review de novo a trial court's grant of summary disposition under MCR 2.116(C)(10).[14]

---

[9] *McQueer*, unpub op at 10.

[10] *Id.*

[11] *McQueer v Perfect Fence Co*, 501 Mich 954 (2018).

[12] *Smitter v Thornapple Twp*, 494 Mich 121, 129; 833 NW2d 875 (2013).

[13] *People v Hall*, 499 Mich 446, 452; 884 NW2d 561 (2016).

[14] *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016).

## III. ANALYSIS

The dispositive question before this Court is whether the statutory-employer provision under MCL 418.171 is applicable to the facts developed in this case.[15] All matters of statutory interpretation begin with an examination of the language of the statute.[16] "The primary rule of statutory construction is that, where the statutory language is clear and unambiguous, the statute must be applied as written."[17] "A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself."[18] A statutory term or phrase "cannot be viewed in isolation, but must be construed in accordance with the surrounding text and the statutory scheme."[19]

The exclusive-remedy provision in MCL 418.131(1) provides that the right to recover workers' compensation benefits under the WDCA "shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease." But MCL 418.641(2) provides that if an employer violates MCL 418.171, the employee "shall be entitled to recover damages from the employer in a civil action because of an

---

[15] The colloquial phrase "statutory employer" may be helpful shorthand in referring to a statutorily imposed employment relationship. Needless to say, however, courts must always look to the language of MCL 418.171 in order to determine whether this employment relationship exists in a given matter.

[16] *Lash v Traverse City*, 479 Mich 180, 187; 735 NW2d 628 (2007).

[17] *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588, 594; 648 NW2d 591 (2002).

[18] *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

[19] *Breighner v Mich High Sch Athletic Ass'n, Inc*, 471 Mich 217, 232; 683 NW2d 639 (2004).

injury that arose out of and in the course of employment notwithstanding the provisions of [MCL 418.131]." Thus, the question turns on whether defendant violated § 171.

MCL 418.171 reads, in pertinent part:

(1) If any employer subject to the provisions of this act, in this section referred to as the principal, contracts with any other person, in this section referred to as the contractor, who is not subject to this act . . . and who does not become subject to this act . . . prior to the date of the injury or death for which claim is made for the execution by or under the contractor of the whole or any part of any work undertaken by the principal, the principal shall be liable to pay to any person employed in the execution of the work any compensation under this act which he or she would have been liable to pay if that person had been immediately employed by the principal. . . .

* * *

(3) This section shall apply to a principal and contractor only if the contractor engages persons to work other than persons who would not be considered employees under section 161(1)(d).

(4) Principals willfully acting to circumvent the provisions of this section or section 611 by using coercion, intimidation, deceit, or other means to encourage persons who would otherwise be considered employees within the meaning of this act to pose as contractors for the purpose of evading this section or the requirements of section 611 shall be liable subject to the provisions of section 641.

Subsection (1) sets forth a statutorily imposed employment relationship, under which an employer assumes the role of a "principal" by contracting with an independent contractor, referred to as the "contractor," for the performance of any work. The principal becomes liable for the payment of workers' compensation benefits to "any person employed" by the contractor for injuries sustained while performing any work on behalf of the principal, provided that the contractor is either not subject to the WDCA or has failed to obtain adequate insurance as required by the WDCA. Subsection (1) thus

8

creates a tripartite employment relationship among the principal, the contractor, and the contractor's employees.[20] Subsection (3), worded in the affirmative, provides that § 171 applies to a principal and contractor only if the contractor engages employees, as defined elsewhere in the WDCA.[21] Subsection (4), particularly relevant here, provides a civil remedy when the principal uses "coercion, intimidation, deceit, or other means to encourage persons who would otherwise be considered employees within the meaning of this act to pose as contractors for the purpose of evading" liability under §§ 171 or 611 of the WDCA.[22]

---

[20] See, e.g., *Williams v Lang (After Remand)*, 415 Mich 179, 194; 327 NW2d 240 (1982) (opinion by WILLIAMS, J.) ("[F]or an employee to recover from a principal [under § 171(1)], there must be," among other things, "a contract between the principal who is covered by the WDCA and a contractor employer who is not covered[.]").

[21] Throughout these proceedings the litigants have accepted that the definition of "employee" referred to in § 171(3) is found in § 161(1)(n), not § 161(1)(d). Because no argument has been raised on this point, we need not address the validity of this interpretation.

[22] Subsection (2) entitles a principal to indemnification by the contractor for the payment of workers' compensation benefits to the contractor's employees. Though indemnification is not at issue, Subsection (2) emphasizes that the statutory-employer provision pertains to a contractor relationship. To "indemnify" means "[t]o reimburse (another) for a loss suffered because of a third party's or one's own act or default[.]" *Black's Law Dictionary* (10th ed). Subsection (2) thus allows the principal to be reimbursed for payments made for a loss suffered on behalf of the contractor's employees. This is in stark contrast from the employer-employee relationship here.

The dissent argues that Subsection (2) does not support the conclusion that the statutory-employer provision applies only to a tripartite employment relationship. Subsection (2) states in pertinent part that "[t]he *principal*, in case he or she pays compensation to the *employee* of such contractor, may recover the amount so paid in an action against such *contractor*." MCL 418.171(2) (emphasis added). Thus, Subsection (2) expressly sets forth a tripartite employment relationship in which indemnification is feasible.

9

The Court of Appeals erred by considering the civil-remedy provision of MCL 418.171(4) in isolation. When engaging in statutory construction, courts must construe the text as a whole.[23] Read as a whole, it is clear that § 171 is not applicable in this matter. Subsection (1) statutorily imposes an employment relationship between the principal and the contractor's uninsured employees for purposes of providing workers' compensation benefits. In general, statutory-employer provisions generally prevent an employer from escaping workers' compensation liability by contracting with uninsured contractors to do work that is part of the employer's trade, business, or occupation.[24] Section 171 thus effectively works as a "safety net" to protect the employees of contractors who do not have adequate workers' compensation insurance. Subsection (3) explicitly sets forth when the statutory-employer provision is applicable, stating that "[t]his *section* shall apply to a principal and contractor *only if* the contractor engages persons to work other than persons who would not be considered employees . . . ."[25] The

---

[23] *Sweatt v Dep't of Corrections*, 468 Mich 172, 179-180; 661 NW2d 201 (2003); see also Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St Paul: Thomson/West, 2012) p 167 ("Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts.").

[24] See 1 Modern Workers Compensation, § 103:17. Statutory-employer, or "contractor-under" statutes, impose on the general employer compensation liability to the employees of contractors under it. Larson's Workers' Compensation Law, § 70.01. "The purpose of [these statutes] . . . was to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, which has it within its power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation protection for their workers." *Id*. at § 70.04.

[25] Emphasis added.

qualifying language—"only if"—limits the applicability of the entire section, including Subsection (4). In other words, if the requirements under Subsection (3) are not met, then an injured employee cannot seek the civil remedy under Subsection (4).[26]

The requirements of Subsection (3) were not met in the instant case. Thus, the parties here were not under any statutory-employment relationship. It is undisputed that plaintiff was an employee of defendant—his direct employer. Plaintiff was not an employee of a contractor, and thus no tripartite employment relationship existed. As previously stated, if the requirements of Subsection (3) are not met, then an injured employee cannot seek the civil remedy under Subsection (4).

---

[26] The dissent argues that "MCL 418.171(3) does not limit the application of all matters arising under MCL 418.171." *Post* at 7. Like plaintiff's counsel at oral argument, the dissent would effectively rewrite Subsection (3) to provide that the words "this section" really mean "Subsection (1)." The dissent emphasizes that Subsection (3) states that "[t]his section shall apply to a principal *and contractor . . . .*" (Emphasis added.) The Legislature's reference to the contractor under Subsection (3) makes sense because both the principal and contractor can be independently liable under § 171. See note 22 of this opinion (discussing indemnification by the contractor). The dissent reads a restraint into Subsection (3) that is simply not there. Nothing in Subsection (3) ties the principal's liability to a finding of liability on the part of the contractor. Subsection (3) plainly states "[MCL 418.171] shall apply to a principal . . . only if the contractor engages persons to work other than persons who would not be considered employees under [MCL 418.]161(1)(d)." The dissent also questions the placement of Subsection (3), claiming that if the Legislature truly meant to limit Subsection (4)'s application to "tripartite relationships, surely it would have used clearer language and placed a subsection regulating the entirety of the section at the beginning or end of the statute." *Post* at 8. This Court will not reject a reasonable construction because the Legislature might have stated its intentions differently. See *Duffy v Dep't of Natural Resources*, 490 Mich 198, 222; 805 NW2d 399 (2011). And unlike the construction proposed by the dissent, the majority's construction of § 171 does not ignore the clear language of Subsection (3).

11

The dissent—reading Subsection (4) in isolation—argues that the requirement for a tripartite relationship renders the reference in Subsection (4) to § 611 superfluous. The dissent suggests that Legislature's references to § 171 and § 611 under Subsection (4) are only relevant if the principal is trying to evade *its* obligations under § 611 by not maintaining workers' compensation coverage. Subsection (4), however, does not express that the principal must be trying to evade its own responsibilities. But the principal could be attempting to help the contractor evade § 611 by getting the contractor's employees to pose as independent contractors. Moreover, the principal would not escape liability if it coerced its direct employees to pose as independent contractors. Section 641(2) also applies if a direct employer violates § 611. Thus, if a direct employer coerced its employees to pose as contractors to evade workers' compensation coverage under § 611, then it is subject to civil liability under § 641(2).[27]

The Court of Appeals also failed to give proper meaning to the term "principal," which has a specialized meaning under § 171 and is not interchangeable with the term "employer." Subsection (1) designates the "principal" as an employer who contracts with a contractor that does not have adequate workers' compensation coverage for its employees. Thus, not all employers are principals under the statutory-employer provision. This conclusion is further confirmed by another part of Subsection (1), which

_____

[27] The dissent is correct that § 641(2) imposes civil liability when there is a violation of § 611. Yet if the employer does not violate § 611, then the employer provided workers' compensation coverage for its employees as required under the WDCA. We refuse to read an inchoate violation of § 611 into the WDCA that allows an employee to avoid the exclusive remedy.

states that a principal can be liable to pay the compensation that it "would have been liable to pay if that person [i.e., the contractor's employee] had been immediately employed by the principal." In other words, the principal is not the employee's actual employer. Instead, as Subsection (1) goes on to provide, if "compensation is claimed from or proceedings are taken against the principal, then . . . reference to the principal shall be substituted for reference to the employer . . . ." Consequently, the principal is merely deemed to be the employer for certain purposes.

To read "principal" as being equivalent with "employer" would render the statutory requirements under Subsection (1) superfluous. The principal may have its own employees, but those employees are not the protected parties under § 171. Under that section, the principal may become the statutory employer only for purposes of providing workers' compensation benefits to the contractor's employees.[28]

The specialized meaning of "principal" is critical when employing the whole-text canon of construction to interpret § 171. The civil-remedy provision under Subsection

---

[28] The dissent argues that the term "principal" under § 171 only means "any employer subject to the provisions of this act." In other words, that the terms "employer" and "principal" are synonymous. The dissent argues that the Legislature's use of the term "if" at the beginning Subsection (1) does not give meaning to the term "principal," but sets forth conditions as to when the principal is liable under the statutory-employer provision. We agree that the term "if" is a conditional conjunction, and thus signals a condition precedent. We disagree, however, that the conditional wording under Subsection (1) does not give meaning to the term "principal." For example, *if* an employer who contracts with a contractor that does not have adequate workers' compensation coverage for its employees, *then* that employer is deemed a "principal" under § 171. Further, the Legislature's placement of the clause "in this section referred to as the principal" does not remove the additional statutory requirements needed for a "principal" under Subsection (1). The dissent's interpretation of § 171 ignores this statutory language.

(4) only applies to "[*p*]*rincipals* willfully acting to circumvent the provisions of this section or section 611" by encouraging employees to pose as contractors. The Legislature's use of the term "principal" under Subsection (4) is presumed to be intentional. There is no dispute that defendant was plaintiff's direct employer. Defendant had not contracted with a contractor with inadequate workers' compensation coverage for its own employees. Thus, defendant is not a "principal" for purposes of the statutory-employer provision. Because defendant is not a "principal," the civil-remedy provision under Subsection (4) does not apply. For these reasons, § 171 is not applicable in this case.[29]

## IV. CONCLUSION

We hold that the statutory-employer provision under MCL 418.171 is not applicable in this case, and thus, plaintiff cannot seek a civil remedy under Subsection (4). We reverse the Court of Appeals judgment as to MCL 418.171 and deny leave as to

---

[29] The dissent, quoting a 1995 opinion of the Court of Appeals, claims that denying plaintiff a remedy under § 171(4) is "in opposition to the principle that the WDCA is 'to be construed liberally in a humanitarian manner in favor of injured employees.'" *Post* at 6 n 4, quoting *Smeester v Pub-N-Grub, Inc (On Remand)*, 208 Mich App 308, 312; 527 NW2d 5 (1995). This Court has more recently tended to restrain calls for liberal or strict construction, opting instead for a reasonable construction of all legal texts. See *SBC Health Midwest, Inc v City of Kentwood*, 500 Mich 65, 71; 894 NW2d 535 (2017); see also Corrigan & Thomas, *"Dice Loading" Rules of Statutory Interpretation*, 59 NYU Ann Surv Am L 231, 231-233 (2003). Further, even if we were to employ a "liberal construction" of the WDCA, such a construction would not mean the act should be judicially rewritten to allow an employee to circumvent the WDCA in order to bring a civil action. In sum, rather than putting a thumb on the scale in favor of the employee, we take a reasonable-construction approach to give meaning to MCL 418.171.

14

any remaining issues presented in the application because a majority of the Court does not believe the remaining issues are worthy of review.

Brian K. Zahra
Stephen J. Markman
David F. Viviano
Kurtis T. Wilder

STATE OF MICHIGAN

SUPREME COURT

DAVID J. McQUEER,

      Plaintiff-Appellee,

v                                  No. 153829

PERFECT FENCE COMPANY,

      Defendant-Appellant.

_____

ZAHRA, J. (*concurring and dissenting in part*).

I concur in all aspects of the majority opinion, including the fact that there is not a majority of the Court willing to take further action on defendant's application. I write separately to address defendant's claim that the Court of Appeals erred by reversing the trial court's denial of plaintiff's motion to amend the complaint to assert an intentional-tort claim. Plaintiff asked the trial court to permit him to amend his complaint to allege that defendant committed an intentional tort, which is an express exception to the exclusive-remedy provision of the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.*[1] The trial court denied plaintiff the opportunity to amend his complaint, finding that the amendment would be futile. The Court of Appeals reversed, holding that the trial court had abused its discretion when it concluded the proposed amendment was futile. According to the Court of Appeals, plaintiff presented sufficient facts to establish a viable intentional-tort claim. I cannot conclude that the trial court

---

[1] See MCL 418.131(1).

abused its discretion by denying plaintiff's motion to amend his complaint. The plain language of the act provides that "[a]n intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury."[2] Plaintiff failed to present evidence that defendant had a specific intent to injure him. Similarly, under the applicable caselaw, plaintiff did not establish that defendant "had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge."[3] Therefore, the trial court's decision to reject plaintiff's motion to amend his complaint to allege an intentional tort was not an abuse of discretion.

For these reasons, I would have fully reversed the Court of Appeals' judgment and reinstated the trial court's orders granting summary disposition in favor of defendant and denying plaintiff's motion to amend his complaint.

## I. STANDARD OF REVIEW

Whether to grant leave to amend a complaint is left to the sound discretion of the trial court. In early stages of litigation, leave to amend a complaint should be freely granted. But this is not to say that all dispositive motions can be thwarted by a motion to amend the pleadings. Amendments may be denied "for particularized reasons, such as undue delay, bad faith or dilatory motive on the movant's part, repeated failure to cure

---

[2] *Id.*

[3] *Id.*; see also *Travis v Dreis & Krump Mfg Co*, 453 Mich 149; 551 NW2d 132 (1996).

deficiencies by amendment previously allowed, undue prejudice to the opposing party, or where amendment would be futile."[4]

A reviewing court "will not reverse a trial court's decision to deny leave to amend pleadings unless it constituted an abuse of discretion."[5] An abuse of discretion occurs when the decision falls outside the range of reasonable and principled outcomes.[6] Further, whether an act constitutes an intentional tort under the WDCA is generally a question of law that is reviewed de novo.[7]

## II.  ANALYSIS

The trial court denied plaintiff's motion to amend the complaint because it concluded that amendment would be futile.  Stated more precisely, the trial court concluded that plaintiff could not establish a viable claim for intentional tort to avoid the exclusive-remedy provision of the WDCA.  As set forth in the majority opinion, MCL 418.131 provides that workers' compensation benefits are the exclusive remedy available to an employee against his or her employer.  The exclusive-remedy provision, however, does not bar a civil remedy if the employee's injury resulted from the employer's intentional tort.  Section 131(1) provides, in pertinent part:

---

[4]*Miller v Chapman Contracting*, 477 Mich 102, 105; 730 NW2d 462 (2007), quoting *Ben P Fyke & Sons v Gunter Co*, 390 Mich 649; 213 NW2d 134 (1973).

[5] *Ormsby v Capital Welding, Inc*, 471 Mich 45, 53; 684 NW2d 320 (2004).

[6] *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017).

[7] See MCL 418.131(1) ("The issue of whether an act was an intentional tort shall be a question of law for the court.").

3

The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge.

The plain language of § 131(1) "makes clear that intentional conduct by the employer is the requisite standard" that triggers the intentional-tort exception.[8] Our decision in *Travis v Dreis & Krump Mfg Co* provided guidance for how an employee may demonstrate an employer's intentional conduct.[9]

A plaintiff employee can prove the intentional-tort exception through direct evidence by demonstrating that the plaintiff's injury was the result of the employer's deliberate act or omission and that the defendant employer specifically intended an injury.[10] The Legislature's intent in § 131(1) was to require that an employee show that the employer had a specific intent to injure.[11] In the alternative, a plaintiff employee can prove that an employer had the specific intent to injure through circumstantial evidence

---

[8] *Gray v Morley (After Remand)*, 460 Mich 738, 742; 596 NW2d 922 (1999).

[9] *Travis*, 453 Mich at 169-180 (opinion by BOYLE, J.). A majority of this Court concurred in the analysis established in Justice BOYLE's lead opinion. *Id*. at 191-192 (RILEY, J., concurring in part and dissenting in part).

[10] *Id*. at 169-170 (opinion by BOYLE, J.). A plaintiff must show that the employer had a conscious purpose to bring about specific consequences. *Id*. at 180. When the employer is a corporation, a particular employee must possess the requisite state of mind to prove an intentional tort. *Id*. at 171-172.

[11] *Id*. at 172.

4

by establishing that (1) the employer had actual knowledge[12] (2) that an injury was certain to occur[13] (3) yet willfully disregarded that knowledge.[14]

The Court of Appeals erred by concluding that the trial court abused its discretion in finding plaintiff's proposed amended complaint futile. Plaintiff admits that Mike Peterson did not intend to injure him. Further, plaintiff testified that Peterson "miscalculated" or "over-calculated" the lowering of the Bobcat's bucket. By all accounts, this was an accident, albeit an accident that was foreseeable and entirely avoidable.

Plaintiff also presented no evidence that defendant had "actual knowledge that an injury was certain to occur yet willfully disregarded that knowledge." The panel placed great weight on the pretrial deposition testimony of Bob Krumm, part-owner of defendant, that "you're guaranteed to get hurt" in reference to his employee's misuse of the Bobcat, in support of its conclusion that Krumm knew an injury was certain to

---

[12] Requiring "actual knowledge" precludes liability based on implied, imputed, or constructive knowledge. See *Travis*, 453 Mich at 173-174 (opinion by BOYLE, J.) ("A plaintiff may establish a corporate employer's actual knowledge by showing that a supervisory or managerial employee has actual knowledge that an injury would follow from what the employer deliberately did or did not do.").

[13] Requiring that an injury be "certain to occur" establishes an extremely high standard of proof that cannot be met by relying on laws of probability, mere occurrence of a similar event, or conclusory statements of experts. *Id*. at 174-175. The employer's awareness that a dangerous condition exists is not enough, but instead the employer must be aware that injury is certain to result from what the actor does. *Id*. at 176.

[14] Establishing "willful disregard" requires proof that an employer's act or failure to act is more than mere negligence (e.g., failing to protect someone from a foreseeable harm). An employer must disregard actual knowledge that an injury is certain to occur. *Id*. at 180.

5

occur.[15]  But there is no record evidence that Krumm, in conveying his directive that the employees refrain from misusing the Bobcat, knew that "injury was certain to occur" if such misuse continued.  Krumm's opinion that injury was certain to occur only came to light after this accident, with the benefit of hindsight, and in the course of the discovery process.  Moreover, such a colloquial expression should not be taken literally.  Krumm's testimony was a conclusory statement—made by a *nonexpert*—expressing the danger in his employee's actions.  In fact, even "conclusory statements by *experts* are insufficient to allege the certainty of injury contemplated by the Legislature."[16]

Even assuming arguendo that Krumm had knowledge that injury was certain to occur, plaintiff failed to establish that Peterson, plaintiff's alleged supervisor, had actual knowledge that an injury was certain to occur.  "The intent requirement will not be fulfilled by presenting 'disconnected facts possessed by various employees or agents of that corporation . . . .' "[17]  Plaintiff testified that he and Peterson had commonly used the Bobcat to hammer fence posts on prior jobs without injury.[18]  The use of a Bobcat to install fence posts, especially sitting underneath the bucket, is unquestionably dangerous and presents a high probability of injury.  The danger and probability of injury, however,

---

[15] See *McQueer*, unpub op at 9.

[16] *Travis*, 453 Mich at 174 (opinion by BOYLE, J.) (emphasis added).

[17] *Id*. at 172, quoting *Adams v Nat'l Bank of Detroit*, 444 Mich 329, 369; 508 NW2d 464 (1993) (opinion by BRICKLEY, J.).

[18] See *Gray*, 460 Mich at 740 (concluding that the defendant did not know that his action of driving erratically while the plaintiff was sitting in the bed of the defendant's truck was "certain" to cause injury when the defendant had driven erratically with the plaintiff in the bed of the defendant's truck "six to eight times" before the injury).

do not meet the Legislature's "extremely high standard of proof" that an injury must be certain to occur.  Thus, plaintiff failed to demonstrate defendant's specific intent to injure him.

The Court of Appeals also erred in its application of the judicially created "continuously operative dangerous condition" exception.  A continuously operative dangerous condition may form the basis of a claim under the intentional-tort exception only if the employer knows the condition will cause an injury and *refrains from informing the employee about it.*[19]  The key is that the employee is left in the dark about the dangerous condition and is thus "unable to take steps to keep from being injured . . . ."[20]  It is not enough that a dangerous condition merely exists.[21]

In this case, defendant did not refrain from informing plaintiff about the dangerous condition—the misuse of the Bobcat to install fence posts.  The facts are undisputed that Krumm admonished both plaintiff and Peterson that using the Bobcat in this manner was dangerous.  According to plaintiff, Krumm warned plaintiff and Peterson that their misuse of the Bobcat was "dangerous as hell" and "you guys better not do that."  Plaintiff further testified that Krumm "got mad and told us not to do it no more."  Thus, plaintiff was not kept in the dark, but was informed of the dangerous condition.  Accordingly, plaintiff was not subject to a continuously operative dangerous condition.

---

[19] *Travi*s, 453 Mich at 178 (opinion by BOYLE, J.); see also *Alexander v Demmer Corp*, 468 Mich 896 (2003); *Giles v Ameritech*, 468 Mich 897 (2003).

[20] *Travis*, 453 Mich at 178 (opinion by BOYLE, J.).

[21] See *id*. at 176.

7

The undisputed material facts demonstrate that defendant did not specifically intend to injure plaintiff. Whether defendant took adequate measures to ensure that Peterson would not again misuse the Bobcat or that plaintiff would not sit underneath the Bobcat's bucket are questions relating to negligence. Mere negligence in failing "to act to protect a person who might foreseeably be injured from an appreciable risk of harm" does not satisfy the intentional-tort exception under the WDCA.[22] Further, the mere allegation of gross negligence or reckless disregard is insufficient to avoid the exclusive-remedy provision.[23] In sum, plaintiff's injury was likely the result of negligence, but there is no evidence that this injury was certain to occur, particularly in light of Krumm's undisputed directive that the Bobcat not be used in this manner. For these reasons, the trial court's decision to reject plaintiff's motion to amend his complaint to allege an intentional tort was not an abuse of discretion.[24]

---

[22] *Id*. at 179.

[23] See *Gray*, 460 Mich at 744.

[24] Plaintiff argues that the trial court erred when it considered the substantive merits of his intentional-tort claim when ruling on his motion to amend the complaint. See *Ben P Fyke & Sons*, 390 Mich at 660 (stating that "a court should ignore the substantive merits of a claim or defense" when considering a motion to amend "unless it is legally insufficient on its face"). Despite this statement in *Fyke*, a trial court has the authority to, on its own initiative, "render judgment without delay" if "the affidavits or other proofs show that there is no genuine issue of material fact . . . ." MCR 2.116(I)(1). The trial court here considered evidence outside the pleadings, viewed that evidence in the light most favorable to plaintiff, and essentially determined that further factual development was unnecessary because plaintiff, given his own admissions and deposition testimony, could not provide a factual basis to support an intentional-tort claim. Thus, even if the court erred by denying plaintiff's motion to amend on the basis that amendment was futile, its decision is justified under MCR 2.116(I)(1), and therefore any error is harmless.

### III. CONCLUSION

We held in the majority opinion that the statutory-employer provision in MCL 418.171 is not applicable in this case and that plaintiff therefore cannot seek a civil remedy under § 171(4). I would further conclude that the trial court did not abuse its discretion when denying plaintiff's motion to amend his complaint to allege an intentional tort. Defendant had neither the specific intent to injure plaintiff nor "actual knowledge that an injury was certain to occur" that he willfully disregarded. MCL 418.131(1). Plaintiff's civil claims against defendant are thus barred by the exclusive-remedy provision of the WDCA.[25]

Accordingly, I would fully reverse the judgment of the Court of Appeals and reinstate the trial court's orders granting summary disposition in favor of defendant and denying plaintiff's motion to amend his complaint.

Brian K. Zahra
Stephen J. Markman
Kurtis T. Wilder

---

[25] Because I would reverse the Court of Appeals' decision as to both the application of MCL 418.171(4) and the intentional-tort claim, I would reinstate the trial court's decision to deny plaintiff's motion to amend his complaint to include a breach-of-contract claim.

9

DAVID J. McQUEER,

       Plaintiff-Appellee,

v                                     No. 153829

PERFECT FENCE COMPANY,

       Defendant-Appellant.

_____

CLEMENT, J. (*concurring in part and dissenting in part*).

The majority opinion concludes that MCL 418.171(4) of the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq*., provides a civil remedy only to an employee of a contractor engaged to a principal and that, accordingly, plaintiff has no cause of action under MCL 418.171. Because I disagree with the majority's interpretation and application of MCL 418.171(4), I dissent. However, I concur with respect to the majority's decision to deny leave to appeal regarding the intentional-tort issue.

As the majority opinion sets forth, under the WDCA, employees are entitled to recover damages from their employer in a civil action when they are injured in the course of employment if the employer has violated MCL 418.171. MCL 418.641(2).[1] MCL 418.171 provides as follows:

_____

[1] MCL 418.641(2) also provides for an employer's civil liability to an employee if the employer has violated MCL 418.611. MCL 418.611 governs workers' compensation coverage requirements for employers, requiring an employer subject to the WDCA to

(1) If any employer subject to the provisions of this act, in this section referred to as the principal, contracts with any other person, in this section referred to as the contractor, who is not subject to this act or who has not complied with the provisions of section 611, and who does not become subject to this act or comply with the provisions of section 611 prior to the date of the injury or death for which claim is made for the execution by or under the contractor of the whole or any part of any work undertaken by the principal, the principal shall be liable to pay to any person employed in the execution of the work any compensation under this act which he or she would have been liable to pay if that person had been immediately employed by the principal. . . .

(2) If the principal is liable to pay compensation under this section, he or she shall be entitled to be indemnified by the contractor or subcontractor. . . .

(3) This section shall apply to a principal and contractor only if the contractor engages persons to work other than persons who would not be considered employees under section 161(1)(d).

(4) Principals willfully acting to circumvent the provisions of this section or section 611 by using coercion, intimidation, deceit, or other means to encourage persons who would otherwise be considered employees within the meaning of this act to pose as contractors for the purpose of evading this section or the requirements of section 611 shall be liable subject to the provisions of section 641. . . .

Accordingly, MCL 418.171(1) creates civil liability on the part of a principal employer who hires contractors that have their own employees but lack workers' compensation insurance. MCL 418.171(2) entitles the principal employer to be indemnified by the contractor for the employer's liability under MCL 418.171(1). Next, MCL 418.171(3)

___

either obtain insurance or self-insure for the purposes of providing disability compensation to employees. Here, no violation of MCL 418.611 occurred because defendant had workers' compensation insurance that was ultimately applied to plaintiff's injuries. Defendant's failure to list plaintiff as an employee to its insurer and subsequent failure to pay a premium to cover plaintiff's employment does not constitute a failure to obtain insurance given that insurance was obtained and that insurance did, in fact, apply to plaintiff's injuries. Whether defendant's actions could constitute an attempt to circumvent the requirements of MCL 418.611 is discussed later in this opinion.

2

provides that the principal employer is only liable under MCL 418.171 if the contractor

engages persons considered employees under the WDCA.[2]

The crux of this appeal is whether MCL 418.171(4), which exposes an employer

to tort liability if the employer encourages would-be employees "to pose as contractors

for the purpose of evading this section or the requirements of section 611," applies to a

situation in which there is only an employer and an employee (i.e., a situation without an

intervening contractor).[3] This subsection of the WDCA is designed to prevent employers

from misclassifying employees as contractors for the purpose of avoiding WDCA

requirements. Such avoidance would lower the workers' compensation costs for an

employer but expose its employees to risk. It also would inhibit the ability of the WDCA

to provide comprehensive coverage to all applicable recipients because the WDCA, like

most other insurance schemes, relies on risk pooling to finance liability. For the reasons

---

[2] The parties have agreed that the definition of "employee" referred to in MCL 418.171(3) is the definition found in MCL 418.161(1)(n) and not the definition found in MCL 418.161(1)(d). I agree with the majority opinion that, considering the parties' agreement on this issue, we need not address the validity of this interpretation.

[3] This Court reviews de novo questions of law in a workers' compensation case. *Smitter v Thornapple Twp*, 494 Mich 121, 129; 833 NW2d 875 (2013). This Court also reviews de novo questions of statutory interpretation. *Id*. When interpreting a statute, this Court must first look to the plain language of the statute and, if the statutory language is clear and unambiguous, must apply the statute according to that plain meaning. *Lash v Traverse City*, 479 Mich 180, 187; 735 NW2d 628 (2007); *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588, 594; 648 NW2d 591 (2002). Further, this Court must construe a statute in accordance with its surrounding text and statutory scheme rather than in isolation. *Breighner v Mich High Sch Athletic Ass'n, Inc*, 471 Mich 217, 232; 683 NW2d 639 (2004). As to the WDCA in particular, "[t]he WDCA is remedial in nature and is to be construed liberally in a humanitarian manner in favor of injured employees." *Smeester v Pub-N-Grub, Inc (On Remand)*, 208 Mich App 308, 312; 527 NW2d 5 (1995). See also *Wells v Firestone Tire & Rubber Co*, 421 Mich 641, 651; 364 NW2d 670 (1984).

3

set forth in this opinion, I would affirm the Court of Appeals' ruling that this statute applies outside the tripartite relationship of principal-contractor-employee and that plaintiff has raised a genuine issue of material fact as to whether he is entitled to compensation under MCL 418.171(4).

MCL 418.171(4) refers to "[p]rincipals," who are defined in MCL 418.171(1) as "any employer subject to the provisions of this act." The majority opinion instead asserts that MCL 418.171(1) defines a "principal" as "an employer who contracts with a contractor that does not have adequate workers' compensation coverage for its employees." I disagree. The portion of the subsection following the clause "[i]f any employer subject to the provisions of this act, in this section referred to as the principal," only sets the conditions under which a principal is liable under MCL 418.171(1); it does not further define a principal. The subsection states that "[i]f any employer subject to the provisions of this act, in this section referred to as the principal," contracts with another person under certain conditions, the principal is liable. The definition of "principal" espoused by the majority is belied by the subsection's use of the conditional conjunction "if." If a principal were "an employer who contracts with a contractor that does not have adequate workers' compensation coverage for its employees," there would be no need for the subsection to begin with the word "if," because a principal would only be considered a principal upon fulfillment of those conditions. The use of the conditional conjunction "if" implies that there can be a principal for whom these conditions—contracting with a contractor without adequate workers' compensation—are not met. Accordingly, the plain language of the statute supports an interpretation of a "principal" as any employer subject

to the WDCA. See *Lash v Traverse City*, 479 Mich 180, 187; 735 NW2d 628 (2007). And here, defendant fits the definition.

MCL 418.171(4) also refers to "employees within the meaning of this act" rather than to persons engaged to work by a contractor. Therefore, neither this reference nor the reference to a principal requires a tripartite relationship for the imposition of liability under MCL 418.171(4).

The reference to MCL 418.611 in MCL 418.171(4) also supports the interpretation that MCL 418.171(4) can be applied outside the tripartite relationship. If MCL 418.171(4) applied only to tripartite relationships, there would be no reason for that subsection to penalize the attempt to avoid the requirements of MCL 418.611 in addition to its penalization of the attempt to avoid the requirements of MCL 418.171. Again, MCL 418.611 requires an employer to secure the payment of compensation, and MCL 418.171 requires a principal employer to compensate its contractor's employees if that contractor is not covered by the WDCA or fails to comply with the WDCA. If the remedy in MCL 418.171(4) is conditioned on a tripartite relationship, a principal acting to circumvent MCL 418.611 would always also be acting to circumvent MCL 418.171 because the principal would be seeking to avoid providing compensation to its contractor's employees under that section. This would render the reference in MCL 418.171(4) to MCL 418.611 superfluous, an interpretation we should not endorse. See *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002) ("Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory.").

5

The consequences of the majority opinion's conclusion also demonstrate that MCL 418.171(4) should not be construed so narrowly. As stated, MCL 418.171(4) imposes liability on a principal who encourages an employee to pose as a contractor for the purposes of evading the requirements of MCL 418.171 or MCL 418.611. If a tripartite relationship is a necessary requirement to liability, as the majority opinion holds, then MCL 418.171(4) only imposes liability when a principal encourages *a contractor's* employee to become a contractor for unlawful purposes. There is no rational reason to limit the liability of a principal seeking to manipulate the WDCA by encouraging would-be employees to pose as contractors to situations in which the would-be employee works for the principal's contractor rather than the principal itself.[4] Interpreting these provisions in that manner leaves the would-be employee of a contractor with greater protection than the employee of an employer.[5] And, considering that a frequent result of becoming a contractor is hiring employees, this interpretation creates the very same situation MCL 418.171 seeks to avoid. See *McCaul v Modern Tile & Carpet, Inc*, 248 Mich App 610, 620; 640 NW2d 589 (2001) ("Section 171 was intended

---

[4] Interpreting the WDCA in such a manner—one that prevents certain injured employees from seeking civil relief—is also in opposition to the principle that the WDCA is "to be construed liberally in a humanitarian manner in favor of injured employees." *Smeester*, 208 Mich App at 312. See also *Wells*, 421 Mich at 651.

[5] The majority opinion states that the principal would not escape liability if it coerced its direct employees to pose as contractors because MCL 418.641(2) would apply to that situation. However, MCL 418.641(2) imposes civil liability where there is an *actual* violation of MCL 418.611, not an *attempt to avoid* MCL 418.611, as MCL 418.171(4) does. Therefore, under the majority opinion's interpretation, it is possible for a principal to escape civil liability if it coerces its direct employees to pose as independent contractors but ultimately fails in its endeavor to avoid WDCA requirements.

6

to protect employees of contractors and subcontractors who failed to procure adequate worker's compensation insurance."). Moreover, the principal's incentive to avoid the cost of workers' compensation insurance is present whether the principal is trying to avoid the associated insurance costs of its own employees or that of its contractor's employees, as charged to the principal through the contractor's prices.

Of course, the majority opinion is correct that this Court does not construe subsections of statutes in isolation and that the remainder of MCL 418.171 must be considered in our interpretive analysis. See *Breighner v Mich High Sch Athletic Ass'n, Inc*, 471 Mich 217, 232; 683 NW2d 639 (2004). In support of its interpretation of the statute, the majority relies on MCL 418.171(3), which states, "This section shall apply to a principal and contractor only if the contractor engages persons to work other than persons who would not be considered employees under section 161(1)(d)." From this text, the majority concludes that an injured employee can only seek the remedy provided by MCL 418.171(4) if the requirements of MCL 418.171(3) are met. However, MCL 418.171(3) does not state that "[t]his section *shall only apply* where a contractor engages persons to work," but instead clarifies when the section applies "to a principal and contractor." As noted, MCL 418.171(4) does not require the existence of a contractor; it only requires a principal who encourages a person to become a contractor—whether successfully or not—for the purpose of evading the WDCA's requirements. Accordingly, MCL 418.171(3) does not limit the application of all matters arising under

7

MCL 418.171.[6]  It instead appears to provide an exception to MCL 418.171(1) wherein a principal is not required to provide compensation to its contractor's workers if those persons would not be considered an employee under the WDCA.  This is further supported by the placement of MCL 418.171(3) following Subsections (1) and (2).  Had the Legislature intended MCL 418.171(3) to limit the applicability of each subsection to tripartite relationships, surely it would have used clearer language and placed a subsection regulating the entirety of the section at the beginning or end of the statute.  See Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St Paul: Thomson/West 2012), p 167 ("Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of *its structure and of the physical and logical relation* of its many parts.") (emphasis added).

Similarly, MCL 418.171(2) also does not support the conclusion that MCL 418.171(4) is applicable only in a tripartite relationship.  MCL 418.171(2) provides that "[i]f the principal is liable to pay compensation under this section, he or she shall be entitled to be indemnified by the contractor or subcontractor."  The majority opinion asserts that this subsection "emphasizes that the statutory-employer provision pertains to a contractor relationship."  It does not.  A principal is liable to pay workers'

---

[6] The majority opinion asserts that this interpretation "reads a restraint into Subsection (3) that is simply not there."  I would argue that this is exactly what the majority opinion has done in its interpretation of MCL 418.171(4).

compensation under MCL 418.171 only under the terms of MCL 418.171(1).[7] Therefore, the majority is correct that MCL 418.171(2) allows the principal to be reimbursed for payments made for a loss suffered on behalf of the contractor's employees. And we do not dispute that indemnification under MCL 418.171(2) requires the existence of a tripartite relationship. However, the majority is incorrect that this indemnity provision is contrary to an interpretation of MCL 418.171(4) that allows for civil liability outside the tripartite relationship. MCL 418.171(2) does not restrict or otherwise inform a principal's civil liability for attempting to escape the requirements of the WDCA as provided in MCL 418.171(4); it only provides the opportunity for indemnification if the conditions of MCL 418.171(1) are met and require the principal to pay workers' compensation benefits to a contractor's employees. Accordingly, the language of MCL 418.171(2) does not support the majority's assertion that MCL 418.171(4) applies only to tripartite relationships.

For these reasons, I would hold that MCL 418.171(4) applies to situations wherein there is no tripartite relationship because nothing in the plain language of the statute requires such a relationship. And because MCL 418.171(4) is applicable to the case at bar, I would also affirm the Court of Appeals' holding that the trial court erred by granting summary disposition to defendant because plaintiff has raised a genuine issue of material fact[8] as to whether defendant "willfully act[ed] to circumvent the provisions of

---

[7] MCL 418.171(4) allows for a civil action outside of workers' compensation benefits, not the payment of workers' compensation benefits as provided by statute.

[8] The trial court granted summary disposition to defendant pursuant to MCR 2.116(C)(10). MCR 2.116(C)(10) provides that a trial court may grant judgment on all or

9

[MCL 418.171] or [MCL 418.611] by using coercion, intimidation, deceit, or other means to encourage persons who would otherwise be considered employees . . . to pose as contractors for the purpose of evading [MCL 418.171] or the requirements of [MCL 418.611] . . . ." Plaintiff has presented evidence that his supervisor encouraged plaintiff—who acted as a full-time employee—to pose as an independent contractor. Plaintiff alleged that his supervisor told him not to tell anyone at the hospital that he was injured while working for defendant because defendant was "not on the books," that his supervisor informed him that there were no workers' compensation benefits for him, and that a part-owner of defendant and defendant's accountant told plaintiff he was not covered under defendant's workers' compensation plan. And although plaintiff was ultimately paid workers' compensation benefits, MCL 418.171(4) is satisfied if defendant encouraged plaintiff to pose as a contractor *in an attempt to* avoid the requirements of MCL 418.611 to secure the payment of compensation through obtaining workers' compensation insurance or self-insuring. In other words, defendant may have encouraged plaintiff to pose as a contractor to prevent plaintiff from making a claim for workers' compensation benefits. Because we must view the evidence in the light most favorable to plaintiff, I would conclude that plaintiff has presented sufficient evidence to allow reasonable minds to differ regarding whether defendant is subject to civil liability

part of a claim when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

under MCL 418.171(4).  See *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).  Accordingly, I would have affirmed the judgment of the Court of Appeals reversing the trial court's grant of summary disposition to defendant.

In conclusion, because MCL 418.171(4) is not limited to situations wherein there is a tripartite relationship and because plaintiff has raised a genuine issue of material fact as to whether defendant is subject to liability under MCL 418.171(4), I dissent from this Court's reversal of the Court of Appeals decision as to MCL 418.171(4).  However, I concur with this Court's decision to deny leave as to all other issues.

Elizabeth T. Clement
Bridget M. McCormack
Richard H. Bernstein